1
2
3
4
5
6
7

*Court Use only above this line.*

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KENNETH CHARLES LASSITER and
ALPHA DORIS D. LASSITER,

          Plaintiffs,

    vs.

CITY OF BREMERTON, MATTHEW
THURING, JOHN VANSANTFORD,
RONALD FORBES, BREMERTON POLICE
CHIEF, KITSAP COUNTY, CLAIRE A.
BRADLEY, CHRISTIAN CASAD, JAMES T.
MITCHELL, AND DOES 1-10,

          Defendants.

NO. C05-5320RBL

**MOTION FOR PARTIAL SUMMARY
JUDGMENT REGARDING
WARRANTLESS ENTRY WITHOUT
PROBABLE CAUSE**

**NOTE ON MOTION CALENDAR:
April 28, 2006**

**ORAL ARGUMENT REQUESTED**

## I.    INTRODUCTION AND RELIEF REQUESTED

On the afternoon of July 25, 2003, two Bremerton Police Officers ("Officers") stormed into the home of Kenneth and Alpha Doris Lassiter. They did so without the Lassiters' consent, without a warrant and, they concede, without probable cause. They did so because, they acknowledged, they had received a report of a possible domestic disturbance involving a female victim, so they wanted to investigate. And they did so even though an uninjured Mrs. Lassiter answered their knock at the door and told them nothing was wrong.

Upon forcing their way into the Lassiters' home, the Officers announced, "We're

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 1

SEA_DOCS:793111.7 [12120-00200]

**GARVEY SCHUBERT BARER**
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464-3939*

1   investigating a possible assault" and demanded that Mr. Lassiter "have a seat" and answer

2   questions.  When Mr. Lassiter asked who they were and refused to speak with them, they

3   pummeled him to the floor and handcuffed him.  Mr. Lassiter's resulting injuries were

4   sufficiently serious to require the Officers to call medics to the scene.  The Officers' assault left

5   bruises and marks on Mr. Lassiter that were visible two days later.

6          The police carted Mr. Lassiter off to jail, where he spent over 48 hours before he was

7   released.  They also detained and later charged Mrs. Lassiter, the ostensible victim of the

8   "crime" they were investigating, after she repeatedly protested the Officers' entry into her

9   home and their mistreatment of her husband.

10         While Mr. Lassiter languished in jail, the Officers doctored up reports to justify their

11  invasion, beating, and arrests, blaming Mr. Lassiter for ignoring three separate commands to

12  "stop" and trying to retreat to a place where he might find a weapon.  They charged him with

13  obstructing a police officer and resisting arrest, and Mrs. Lassiter with obstructing.

14         Unfortunately for the Officers, Mr. Lassiter had audiotaped the entire transaction and

15  that tape contradicted the Officers' story.  The tape revealed no attempt to flee, no threatening

16  movements, no repeated commands to stop.  Instead, it recorded Mr. Lassiter say exactly three

17  things to the police between the time they attacked and arrested him: (1) He asked, "Who are

18  you?"; (2) When asked "What's going on?" he answered, "Nothing"; and (3) When ordered to

19  sit down, he responded, "No, I'm not here to discuss this with you."  After this audiotape came

20  to light, the City dismissed all charges against the Lassiters.

21         "The right of the people to be secure in their persons, houses, papers, and effects,

22  against unreasonable searches and seizures, shall not be violated . . . ."  So proclaims the Fourth

23  Amendment to the United States Constitution.  Article 1, section 7 of the Washington State

24  Constitution likewise declares that "No person shall be disturbed in his private affairs, or his

25  home invaded, without authority of law."  A person's home is especially sacrosanct and a

26

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 2

SEA_DOCS:793111.7 [12120-00200]

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464-3939

1    person's Fourth Amendment rights are strongest there.[1]  Accordingly, "searches conducted

2    outside the judicial process, without prior approval by judge or magistrate, are per se

3    unreasonable under the Fourth Amendment—subject to a few specifically established and well-

4    delineated exceptions."[2]

5         One such exception exists where exigent circumstances, such as a suspect's escape or

6    the destruction of evidence, make it impossible for the police to obtain a warrant before

7    entering a home.  But this exception only applies if a warrant could have been obtained, i.e., if

8    probable cause to issue a warrant existed, something the City of Bremerton and Officer Thuring

9    concede was absent here.

10        Another exception exists when the police enter a home to respond to a life- or property-

11   threatening emergency.  But the exception only applies if the police conduct is "totally

12   divorced from the detection, investigation, or acquisition of evidence relating to the violation of

13   a criminal statute."[3]  Here, the Officers repeatedly admitted – on tape during their invasion of

14   the Lassiters' home, during subsequent court testimony on a motion to dismiss the charges

15   against the Lassiters, and in their Answers – that the purpose of their intrusion was to "try[] to

16   find out if in fact [a] crime ha[d] occurred"  and to "investigat[e] a possible assault."  This

17   removes their conduct from the exception for genuine emergencies.

18        Because neither exception applies, the Officers' warrantless invasion of the Lassiters'

19   home without probable cause violated the federal and Washington constitutions as a matter of

20   law.  This Court should so rule.

## II.    ISSUES PRESENTED

22        1.    Where the police have probable cause to obtain a search warrant, they need not

23   obtain one if exigent circumstances (such as a fleeing suspect) make it impractical to do so.

---

25   [1] *United States v. Winsor*, 846 F.2d 1569, 1577-78 (9th Cir. 1988) (en banc).

26   [2] *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (internal quotation omitted); *see also Payton v. New York*, 445 U.S. 573, 585 (1980).

[3] *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973).

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 3

SEA_DOCS:793111.7 [12120-00200]

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464-3939

1   Here, the police invaded the Lassiters' home without probable cause, meaning that they

2   couldn't have obtained a search warrant if they had sought one.  Did their warrantless intrusion

3   fall within the "exigent circumstances" exception to the warrant requirement?

4       2.      The emergency doctrine doesn't justify the entry of a home by the police unless

5   their conduct is "totally divorced from the detection, investigation, or acquisition of evidence

6   relating to the violation of a criminal statute."  Here, the police repeatedly cited their interest in

7   investigating a possible domestic violence crime as their justification for invading the Lassiters'

8   home.  Does the emergency doctrine justify their warrantless invasion of the Lassiters' home?

### III.   UNDISPUTED FACTS

**A.   The Police Officers Lacked Probable Cause to Enter the Lassiters' Home and Arrest Mr. Lassiter**

    The Lassiters were spending the afternoon of July 25, 2003 in their Bremerton home[4]

when Officers John VanSantford and Matthew Thuring arrived.  They were there to investigate

a phoned-in report of a possible domestic altercation.[5]  Immediately upon arrival, the two

Officers entered the couple's fenced yard.[6]  Ignoring the walkway to the front door,[7] they began

prowling along the perimeter and rear of the home to try and overhear what was happening.[8]

Standing just three to six feet from the house in a location where there was no sidewalk (or

even a worn path in the grass), Officer Thuring heard muffled yelling, but he couldn't tell

---

[4] Declaration of Kenneth Charles Lassiter in Support of Plaintiffs' Motion for Partial Summary Judgment Regarding Warrantless Entry ("Mr. Lassiter Decl.") ¶ 2; Declaration of Alpha Doris D. Lassiter in Support of Plaintiffs' Motion for Partial Summary Judgment Regarding Warrantless Entry ("Mrs. Lassiter Decl.") ¶ 2.

[5] Answer of Defendants City of Bremerton and Robert Forbes to Second Amended Complaint ("City's Answer") at 4:11; Defendant Thuring's Answer to Second Amended Complaint ("Thuring Answer") at 4:1-3, 20-23; Defendant VanSantford's Answer to Second Amended Complaint ("VanSantford Answer") at 4:1-3, 20-23; Declaration of David H. Smith in Support of Plaintiffs' Motion for Partial Summary Judgment Regarding Warrantless Entry ("Smith Decl.") p.57 (Ex. 4 at 13:8-14).

[6] City's Answer at 4:12.

[7] See Mr. Lassiter Decl. ¶ 3-5; Ex. A for a description and photos of the exterior of the Lassiters' home.

[8] Thuring Answer at 4:1-3; VanSantford Answer at 4:1-3; Smith Decl. pp58-59 (Ex. 4 at 14:21-15): p.150 (Ex. 6 at 31:13-19).

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 4

SEA_DOCS:793111.7 [12120-00200]

**GARVEY SCHUBERT BARER**
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464-3939*

whether the voice sounded angry.[9]  Officer Thuring admitted – at a subsequent evidentiary hearing on a motion to dismiss the charges against the Lassiters – that at this point in time, he lacked probable cause to believe a crime had been committed.[10]

The Officers reconvened on the driveway where, they say, they heard a voice say to stay away from the window and be quiet.[11]  Officer Thuring acknowledged in his testimony that at this point, the police still lacked probable cause to believe a crime had been committed.[12]

The Officers knocked three times on the front door.[13]  Mrs. Lassiter opened the door, but since she was wearing a short dressing gown, she didn't open it all the way.[14]  Still, Officer Thuring could see that she didn't appear hurt,[15] and when asked, she told the Officers there was no problem.[16]  Officer Thuring thought she looked upset, but he couldn't tell why and he couldn't say if she was upset because she was angry or because she was afraid.[17]  Officer Thuring admitted that he didn't have probable cause to believe a crime had been committed after talking to Mrs. Lassiter in the doorway.[18]

Nonetheless, Officer Thuring jammed the door open with his foot[19] and the two Officers charged past Mrs. Lassiter into the house.[20]  They didn't have a warrant to enter or search the house nor did they have an arrest warrant for anyone in the house.[21]  Nor did they have Mrs. Lassiter's consent to enter her home.[22]

---

[9] Smith Decl. p. 61 (Ex. 4 at 17:1-13); Ex. 6 at 47:14-48:10, 49:17-22.
[10] Smith Decl. pp. 77-78 (Ex. 4 at 33:23-34:2).
[11] Smith Decl. pp. 61-62 (Ex. 4 at 17:15-18:7).
[12] Smith Decl. p. 78 (Ex. 4 at 34:3-14).
[13] Smith Decl. pp. 62 (Ex. 4 at 18:11-16) and p. 63 (19:7-9).
[14] Mrs. Lassiter Decl. ¶ 2.
[15] Smith Decl. p. 63 (Ex. 4 at 20:13-14).
[16] City's Answer at 4:20-21; Mrs. Lassiter Decl. ¶ 2; Smith Decl. p. 64 (Ex. 4 at 20:18-20).
[17] Smith Decl. p. 63 (Ex. 4 at 19:10-15.)
[18] Smith Decl. p. 79 (Ex. 4 at 35:15-19).
[19] Smith Decl. p. 89 (Ex. 4 at 45:16-46:5).
[20] Thuring Answer at 4:22-24; VanSantford Answer at 4:22-24; Mrs. Lassiter Decl. ¶ 3; Smith Decl. p84 (Ex. 4 at 40:7-10); p198 (Ex. 9 at 2); p202 (Ex. 10 at 1).
[21] Thuring Answer at 7:13-14; VanSantford Answer at 7:13-14; City's Answer at 2:1-2; Smith Decl. p16 (Ex. 2 at 9:15-19).
[22] Thuring Answer at 4:25-5:1; VanSantford Answer at 4:25-5:1; Smith Decl. p.14 (Ex. 2 at 7:1), p.130 (Ex. 6, 11:13-15).

---

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 5

**GARVEY SCHUBERT BARER**
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464-3939*

Once inside the house, the Officers saw Mr. Lassiter standing in the living room.[23] Officer Thuring admitted that at this point, he still lacked probable cause to arrest anyone.[24]

Unbeknownst to the police, Mr. Lassiter had turned on a tape recorder when they entered his home. He placed it on a table,[25] and it recorded what happened from the moment the Officers entered the Lassiters' home until they began manhandling Mr. Lassiter:[26]

| | |
|---|---|
| Alpha Lassiter: | Kenn? |
| Kenneth Lassiter: | Huh? |
| Officer VanSantford: | What's going on? |
| Kenneth Lassiter: | Nothing. |
| Officer VanSantford: | Nothing? We're standing out here and you're yelling and screaming all over town. Why don't you have a seat over here for me? |
| Kenneth Lassiter: | No. I'm not here to discuss this with you. |
| Officer VanSantford: | Okay. Have a seat. We're investigating a possible assault, okay? We're not leaving. |
| Kenneth Lassiter: | Ahhh. |
| Officer VanSantford: | Have a seat here. Sir, I'm not gonna tell ya again. We're not playing games with you. |
| Kenneth Lassiter: | Ah, who are you? Hold it! |
| Officer VanSantford: | I'm a police officer. |
| Kenneth Lassiter: | No. Get your hands off me. (scuffling noises) What are you doing? Ging! |

---

[23] Smith Decl. p84 (Ex. 4 at 40:1-10).
[24] Smith Decl. p94 (Ex. 4 at 50:23-51:4).
[25] Mr. Lassiter Decl. ¶ 2.
[26] With this motion, plaintiffs have submitted duplicate copies of the audio recording made July 25, 2003, so the Court and opposing parties can independently assess the accuracy of plaintiffs' transcript. For the same reason, plaintiffs also have submitted duplicate copies of the audio recordings made by the Bremerton Municipal Court on February 27 and March 12, 2004. See, Notice of Filing Paper Materials With The Clerk. Mrs. Lassiter's declaration discusses how the transcript of the July 25, 2003 audio recording was made at ¶ 8-10.

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 6

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington   98101-2939
206 464-3939

SEA_DOCS:793111.7 [12120-00200]

| | |
|---|---|
| | Ging![27] |
| Alpha Lassiter: | No, no, no.  Don't do that to my husband. |
| Kenneth Lassiter: | Owwwwww.  Ging, stop it. |
| Alpha Lassiter: | Don't do that to my husband.[28] |

As the tape demonstrates, less than 30 seconds elapsed between the time Mr. Lassiter realized the police were in his home until they made physical contact with him.  Barely five seconds later, Mr. Lassiter cried out in pain.

As the two Officers grabbed Mr. Lassiter, threw him to the floor face first, and handcuffed him,[29] the tape recorded Mrs. Lassiter's pleas for them to stop, in response to which the Officers threatened her with jail:

| | |
|---|---|
| Officer VanSantford: | Get away from here, ma'am.  Back off. |
| Alpha Lassiter: | Don't do that to my husband. |
| Kenneth Lassiter: | I told you that's what they were gonna do. You're hurting my arms – get it off. |
| Alpha Lassiter: | You know he ... |
| Officer VanSantford: | Back off. |
| Officer Thuring: | Stand back now, ma'am. |
| Alpha Lassiter: | You are inside my house! |
| Officer Thuring: | Yeah. |
| Officer VanSantford: | You wanna go to jail also?[30] |
| | . . . |
| Alpha Lassiter: | You are break ... he's hurt! |
| Kenneth Lassiter: | Stop it, stop it, stop it, stop it! |

[27] "Ging" is Mr. Lassiter's nickname for his wife.  Mr. Lassiter Decl. ¶ 1.
[28] Smith Decl. p.8 (Ex. 2 at 1:18-2:9).
[29] Smith Decl. p.9 (Ex. 2 at 2:5-18); p.69 (Ex. 4 at 25:1-19); *see also* Mr. Lassiter Decl. ¶ 6.
[30] Smith Decl. p.9 (Ex. 2 at 2:14-24).

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464-3939

1    Officer VanSantford: Ma'am?

2    Alpha Lassiter:       Sir, please stop!  This is our problem.  This
                           is our problem.  You don't have anything
3                          to do with this.

4    Officer VanSantford: Shut your mouth!  Yeah!  Shut up!

5    Officer Thuring:      Shut up.[31]

6    In addition, the Officers detained Mrs. Lassiter, refusing to allow her to leave the room,

7    even as she attempted to assist her husband:

8    Officer VanSantford: Ma'am.

9    Alpha Lassiter:       No, no, no.  Hold on one second.  Where is
                           my husband's...
10

11   Officer VanSantford: Ma'am, come back here.

12   Alpha Lassiter:       Sir...

13   Officer VanSantford: So we know you're not grabbing a
                           weapon, you stay here.
14

15   Alpha Lassiter:       No, no, no.  I'm not gonna.  My husband is
                           hurting (inaudible).[32]
16

17                                    . . .

     Officer VanSantford: Now.  You can have a seat right here.
18

19   Alpha Lassiter:       Okay.

     Officer VanSantford: And if you get up – I'm gonna put
20                          handcuffs on you...

21   Alpha Lassiter:       Okay.[33]

22   Officer Thuring admitted on the stand that the Officers – not Mr. Lassiter – were the

23   first to use physical force.[34]  He admitted that while Mr. Lassiter initially tried to slip free of

24   _____

25   [31] Smith Decl. p.10 (Ex. 2 at 3:22-4:2).
     [32] Smith Decl. p.12 (Ex. 2 at 5:5-10).
26   [33] Smith Decl. p.16 (Ex. 2 at 9:6-9).
     [34] Smith Decl. p.97 (Ex. 4 at 53:19-21).

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 8

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464-3939

SEA_DOCS:793111.7 [12120-00200]

their grip once they began grappling him to the floor, Mr. Lassiter never punched or kicked at the Officers.[35] Officer Thuring admitted that when they arrested Mr. Lassiter, they still lacked probable cause to arrest him for domestic violence,[36] a point Mr. Lassiter made to the police during his arrest:

> Officer Thuring:          Okay. Okay. That's fine. We need to find
>                          out by law if there's an assault that took
>                          place here.
>
> Kenneth Lassiter:         Well you found out there isn't any. Now get
>                          out of here.[37]

The audiotape demonstrates that the police Officers did not command Mr. Lassiter to stop, but rather asked him, "What's going on?".[38]  When Officer Thuring was confronted with this fact - he admitted that the Officers' question "would not clearly convey to the target of that statement that they have to stop."[39]  He further admitted that if he asked a suspect "What's going on?" and the suspect walked away from him (as he contended Mr. Lassiter did), he would not "have enough to arrest for obstructing at that juncture."[40]  Yet that is precisely what the Officers did.

Mr. Lassiter sustained injuries as a result of the assault,[41] and the Officers were forced to call medics to the scene to treat him.[42]  When it was all over, the police booked Mr. Lassiter into the Kitsap County Jail on charges of third-degree assault, obstructing justice, and resisting arrest.[43]  He remained in jail for over 48 hours.[44]

**B.     The Discrepancies between the Audiotape and the Police Officers' Reports Show that the Officers Lack Credibility**

---

[35] Smith Decl. p.98 (Ex. 4 at 54:7-10).
[36] Smith Decl. p.100 (Ex. 4 at 56:1-3).
[37] Smith Decl. p.17 (Ex. 2 at 10:1-3).
[38] Smith Decl. p.8 (Ex. 2 at 1:20).
[39] Smith Decl. p.145 (Ex. 6 at 26:13-15).
[40] Smith Decl. p.145 (Ex. 6 at 26:22-27:6).
[41] Mr. Lassiter Decl. ¶ 8-9; Ex. B; Smith Decl. p.135 (Ex. 6 at 16:13-24).
[42] Smith Decl. p. 70 (Ex. 4 at 26:19-20); Smith Decl. p.136 (Ex. 6 at 17:7-10).
[43] Smith Decl. p. 190-191 (Ex. 7).
[44] Mr. Lassiter Decl. ¶ 7.

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464-3939

While Mr. Lassiter sat in jail, the Officers prepared reports[45] in which they attempted to justify their decision to invade plaintiffs' home, then assault and arrest Mr. Lassiter and accuse both plaintiffs of crimes they did not commit.  Unaware of the audiotape, the Officers wrote that they felt personally threatened after Mr. Lassiter ignored three separate commands to "stop" and retreated from the Officers.[46]  They claimed that Mr. Lassiter's refusal to honor these repeated commands to "stop" amounted to obstruction of justice.[47]

Their account, of course, is belied by the audiotape, as a comparison of the tape and excerpts from the Officers' reports shows:

**Officer VanSantford's Accident/Investigation Report:**  K. LASSITER began walking away from me, towards the kitchen.  I told K. LASSITER to stop, and he continued walking toward the kitchen. ... I again told him to stop and he did not.  I closed the distance between us, telling him to stop again and to sit down.  K. LASSITER failed to heed my order and just as he entered the entry into the kitchen, I took hold of his left arm and told him to stop again.[48]

**Officer Thuring's Supplemental Report:**  Officer VanSantford told K. Lassiter to stop and tell us what was going on.  K. Lassiter continued to walk away without saying a word and appeared to [sic] walking straight for the kitchen, a location of many possible weapons.  Officer VanSantford again told K. Lassiter to stop, to which K. Lassiter did not respond.  Officer VanSantford grabbed K. Lassiter by the left arm, pulling back from the kitchen area into the living room, and told him he could not leave.[49]

**Tape Transcript:**

Kenneth Lassiter:        Huh?

Officer VanSantford:  What's going on?

---

[45] Smith Decl. p. 197-202 (Ex. 9 & Ex. 10).
[46] Smith Decl. p. 198 (Ex. 9 at 2)
[47] Smith Decl. p. 198-199 (Ex. 9 at 2-3).
[48] Smith Decl. p. 198 (Ex. 9 at 2).
[49] Smith Decl. p. 202 (Ex. 10 at 1).

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464-3939

| | | |
|---|---|---|
| Kenneth Lassiter: | Nothing. | |
| Officer VanSantford: | Nothing?  We're standing out here and you're yelling and screaming all over town.  Why don't you have a seat over here for me? | |
| Kenneth Lassiter: | No. I'm not here to discuss this with you. | |
| Officer VanSantford: | Okay. Have a seat. We're investigating a possible assault, okay?  We're not leaving. | |
| Kenneth Lassiter: | Ahhh. | |
| Officer VanSantford: | Have a seat here.  Sir, I'm not gonna tell ya again.  We're not playing games with you. | |
| Kenneth Lassiter: | Ah, who are you?  Hold it! | |
| Officer VanSantford: | I'm a police officer. | |
| Kenneth Lassiter: | No.  Get your hands off me.  (scuffling noises)  What are you doing?  Ging! Ging![50] | |

The tape reveals that the Officers never asked Mr. Lassiter to stop before they attacked him.

Nor does the tape record any attempt by Mr. Lassiter to flee in response to a command to stop.

The City admits that "the Officers arrested and imprisoned plaintiffs without a warrant,"[51] and the Officers concede they did not have a warrant.[52]  It is uncontested, therefore, that Officers Thuring and VanSantford entered the Lassiters' home without the Lassiters' consent, a warrant or probable cause, and that they arrested Mr. Lassiter without probable cause to believe that he was guilty of either an assault or of obstruction.  It is further uncontested that the reports filed by Officers VanSantford and Thuring do not reflect the actual events as heard on the audiotape.  These reports cannot create a genuine issue of material fact.

**C.    The Police Officers Entered the Lassiters' Home for the Purpose of Conducting a Criminal Investigation**

---

[50] Smith Decl. p.8 (Ex. 2 at 1:19-26).
[51] City's Answer at 2:1-2.
[52] Thuring Answer at 7:13-14; VanSantford Answer at 7:13-14.

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 11

SEA_DOCS:793111.7 [12120-00200]

**GARVEY SCHUBERT BARER**
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington   98101-2939*
*206 464-3939*

1       It is equally uncontested that the Officers entered the Lassiters' home – not in response

2   to a life-threatening emergency – but to conduct a criminal investigation.  Not only do the

3   City[53] and the Officers themselves[54] admit that they were investigating a complaint, but the

4   Officers repeatedly said as much.  Among the statements recorded on the audiotape of the

5   invasion were the following:

6           Officer VanSantford:  Have a seat.  We're investigating a possible

7                          assault, okay?[55]

8                          . . .

9           Officer Thuring:  We need to find out by law if there's an

10                         assault that took place here.[56]

                       . . .

11          Officer Thuring:  Washington State Law requires when we are

12                         dispatched to a report of possible domestic

13                         violence - which we were - we are required
by law to come out whether an assault
occurred or not.  At least we have to

14                         investigate.[57]

15                         . . .

16          Officer Thuring:  We have a requirement to make sure - to
find out if an assault occurred or not.[58]

17                         . . .

18          Kenneth Lassiter:  What are you doing here?

19          Officer Thuring:  We came here to investigate a report of an

20                         assault.[59]

21  Officer Thuring made equally damning admissions on the witness stand:

22

23  ----

53 City's Answer at 4:11.

24  54 Thuring Answer at 4:1-3, 20-23; VanSantford Answer at 4:1-3, 20-23.
55 Smith Decl. p.8 (Ex. 2 at 1:25-26).

25  56 Smith Decl. p.17 (Ex. 2 at 10:1-2).
57 Smith Decl. p.18 (Ex. 2 at 11:2-4).

26  58 Smith Decl. p.18 (Ex. 2 at 11:10-11).
59 Smith Decl. p.20 (Ex. 2 at 13:4-5).

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464-3939

1   David Smith: Okay. And you're trying to find out if in fact the
2   crime has occurred and that's why you want to talk to people
    inside, correct?

3   Officer Thuring: Ultimately, yes.[60]

4   . . .

5   Ms. Dalton: So your purpose on going inside the house was to
6   investigate the potentiality for a domestic violence assault?

7   Officer Thuring: To investigate a report of a domestic violence
    assault.[61]

8   The Officers' concessions are consistent with the facts. Mrs. Lassiter, after all, was

9   visibly unhurt when the Officers spoke with her at the door.[62] When Mrs. Lassiter confronted

10  the police with this fact during the arrest, the Officers could only point to a past assault, not an

11  ongoing one, as an excuse for barging into plaintiffs' home:

12  Alpha Lassiter:        Sir, you come in, I opened that door, but I
13                         didn't let you come in.  But you just came
                           in.  My husband was surprised when you
14                         were inside our house.

    Officer Thuring:       Mrs. Lassiter?
15
16  Alpha Lassiter:        Yes, sir?

    Officer Thuring:       If you didn't open the door --- we were
17                         gonna kick the door in to make sure that
                           YOU were safe.
18
19  Alpha Lassiter:        **Well I was safe when you see me?  I was
                           standing.  I wasn't (inaudible).**

20  Officer Thuring:       **We don't know that you weren't
                           assaulted already. ...**[63]
21
22  Having suffered indignity, emotional distress and physical injuries at the hands of the

23  defendant Bremerton Police Officers, the Lassiters now seek a remedy from this Court. They

24  _____
    [60] Smith Decl. p.78 (Ex. 4 at 34:22-24).
25  [61] Smith Decl. p.134 (Ex. 6 at 15:12-14).
    [62] Thuring Answer at 4:24-5:1; VanSantford Answer at 4:24-5:1; Smith Decl. p.64 (Ex. 4 at
26  20:13-14).
    [63] Smith Decl. p.18 (Ex. 2 at 11:13-22) (emphasis added).

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 13

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464-3939

1    move for summary judgment on the illegality of the police's warrantless invasion of their

2    home, without probable cause and without reason to believe that a genuine emergency existed.

3    ## IV.   LEGAL ARGUMENT

4    ### A.   Summary Judgment Standard.

5    The summary judgment standard is well-settled. Summary judgment is appropriate

6    when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine

7    issue of material fact which would preclude summary judgment as a matter of law.[64]  Once the

8    moving party has satisfied its burden, it is entitled to summary judgment if the non-moving

9    party fails to present "specific facts showing that there is a genuine issue for trial."[65]  "The

10   mere existence of a scintilla of evidence in support of the non-moving party's position is not

11   sufficient."[66]  Factual disputes whose resolution would not affect the outcome of the suit are

12   irrelevant to the consideration of a motion for summary judgment.[67]

13   ### B.   Absent Exigent Circumstances or an Emergency, the Officers' Warrantless Invasion Into the Lassiters' Home Without Probable Cause Violated the Federal and Washington Constitutions

15   To prove a violation of their federal civil rights under 42 U.S.C. § 1983, the Lassiters

16   must prove (1) that the conduct complained of was committed by a person acting under color of

17   state law and (2) that this conduct deprived the Lassiters of rights, privileges, or immunities

18   secured by the United States Constitution.[68]  The Lassiters easily meet the first requirement.

19   Officer Thuring and Officer VanSantford were on-duty police Officers responding to a 911

20   call.[69]

21   The second element, while requiring further discussion, is just as obviously present

22   here.  The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a

---

[64] Fed. R. Civ. P. 56.
[65] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).
[66] *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).
[67] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[68] *West v. Atkins*, 487 U.S. 42, 48 (1988).
[69] Thuring Answer at 2:24-25; VanSantford Answer at 2:24-25; Smith Decl. p.56 (Ex. 4 at 12:10-13:14).

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 14

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464-3939

1   cardinal principle that "searches conducted outside the judicial process, without prior approval

2   by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject to a few

3   specifically established and well-delineated exceptions."[70]  A person's home is a most

4   sacrosanct domain and Fourth Amendment interests are at their strongest there.[71]

5       The Washington Constitution provides greater protection to privacy interests than the

6   Fourth Amendment.[72]  Under Washington law, a warrantless search is unreasonable as a matter

7   of law unless the government actor establishes that one of a very narrow set of exceptions

8   applies.[73]  These exceptions are jealously and carefully drawn.[74]

9       Under the Washington Constitution, like the federal one, a person's home receives

10   heightened constitutional protection,[75] and a citizen is entitled to greater privacy there than

11   elsewhere.[76]  For this reason, the closer an officer comes to intrusion into a dwelling, the

12   greater the constitutional protection.[77]  This heightened protection places "an onerous burden

13   upon the government to show a compelling need to act outside of our warrant requirement."[78]

14   In fact, Washington places such a high value on privacy of homes that the State Legislature has

15   imposed not just civil penalties for a warrantless search of a home but also strict criminal

16   liability on the police Officers.[79]

17       Here, it is uncontested that Officers Thuring and VanSantford invaded the Lassiters'

---

[70] *Mincey*, 437 U.S. at 390 (internal quotation omitted); *see also Payton*, 445 U.S. at 585.
[71] *Winsor*, 846 F.2d at 1577-78.
[72] *State v. Young,* 867 P.2d 593, 599 (Wash. 1994); *State v. Bell*, 737 P.2d 254, 256-57 (Wash. 1987); *State v. Chrisman*, 676 P.2d 419, 422 (Wash. 1984).
[73] *State v. Cardenas*, 47 P.3d 127, 130 (Wash. 2002); *State v. Leach*, 782 P.2d 1035, 1037 (Wash. 1989) (holding that warrantless searches are per se unreasonable absent a showing by the State that one of the few narrow exceptions to the warrant requirement pertains).
[74] *State v. Morse*, 123 P.3d 832, 834 (Wash. 2005); *State v. Reichenbach*, 101 P.3d 80, 84 (Wash. 2004).
[75] *Young*, 867 P.2d at 599; *State v. Berber*, 740 P.2d 863, 866 (Wash. App. 1987) (a person's home is a highly private place).
[76] *Young*, 867 P.2d at 599.
[77] *Chrisman*, 676 P.2d at 423.
[78] *Id*. at 424.
[79] RCW 10.79.040; *State v. Groom*, 947 P.2d 240 (Wash. 1997).

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464-3939

1    home without consent or a warrant of any kind.[80]   Accordingly, their conduct was unlawful

2    unless they can prove that an exception to the warrant requirement set forth in the federal and

3    Washington constitutions applies.

4           Courts have identified two "specifically established and well-delineated exceptions" to

5    the warrant requirement: exigency and emergency.[81]   Neither exception applies here.

6    **C.    Because the Police Lacked Probable Cause to Obtain a Warrant, They**
     **Cannot Blame Their Failure To Obtain One on Exigent Circumstances**

7           Exigent circumstances may justify failure to obtain a warrant before entering a home.

8    Under federal law, exigent circumstances are "present when a reasonable person would believe

9    that entry . . . was necessary to prevent physical harm to the Officers or other persons, the

10   destruction of relevant evidence, the escape of the suspect, or some other consequence

11   improperly frustrating legitimate law enforcement efforts."[82]   Courts applying Washington law

12   have identified five circumstances that potentially qualify and they have articulated six factors

13   that are relevant to determining whether exigent circumstances exist.[83]

14          Under federal and Washington law, the exigent circumstances exception only permits a

15   warrantless search if there is probable cause to believe that contraband/or evidence of a crime

16   will be found at the premises and that exigent circumstances exist.[84]   In other words, the police

17

18   [80] Thuring Answer at 4:25-5:1, 7:13-14; VanSantford Answer at 4:25-5:1, 7:13-14; City's
     Answer at 2:1-2.

19   [81] *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005).

     [82] *E.g., Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1170 (9th Cir. 2003).

20   [83] The five different situations in which exigent circumstances may be present are: (1) hot
     pursuit; (2) fleeing suspect; (3) danger to arresting officer or the public; (4) mobility of a

21   vehicle; (5) mobility or destruction of the evidence. *State v. Terrovona*, 716 P.2d 295, 301
     (Wash. 1986); *State v. Counts*, 659 P.2d 1087, 1089-90 (Wash. 1983); *State v. Bessette*, 21 P.3d

22   318, 320 (Wash. App. 2001); *State v. Le*, 12 P.3d 653, 656 (Wash. App. 2000); *Ramirez*, 746
     P.2d at 346 n.4.  The factors to use in assessing a claim of exigency are: (1) the gravity or

23   violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is
     reasonably believed to be armed; (3) whether there is a reasonably trustworthy information that

24   the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5)
     a likelihood that the suspect will escape if not swiftly apprehended; and (6) the entry is made

25   peaceably. *Cardenas*, 47 P.3d at 130.
     [84] *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002*); Lalonde v. County of Riverside*, 204 F.3d 947,

26   954 (9th Cir. 2000); *State v. Flowers*, 789 P.2d 333 (Wash. App. 1990) (holding that
     conclusion that probable cause existed does not end the inquiry into the propriety of the

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 16

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464-3939

SEA_DOCS:793111.7 [12120-00200]

1    can't blame their failure to obtain a warrant on exigent circumstances if they lacked sufficient

2    evidence to obtain a warrant anyway.

3        Under federal and Washington law, probable cause exists when "facts and

4    circumstances before the officer are sufficient to warrant a person of reasonable caution to

5    believe that a crime has occurred or evidence of a crime will be found in place to be

6    searched."[85]  This determination rests on the totality of facts and circumstances within the

7    officer's knowledge at the time of the search or arrest.[86]

8        The U.S. Supreme Court has emphasized that probable cause demands factual

9    specificity on the part of the police and that government claims of probable cause must be

10   judged according to an objective standard.[87]  "Anything less would invite intrusions upon

11   constitutionally guaranteed rights based on nothing more than inarticulate hunches, a result this

12   Court has consistently refused to sanction."[88]

13       The exigent circumstances exception is "rigorously guarded."[89]  The government bears

14   the "heavy burden" of proving that the elements of the exception – including probable cause –

15   were present.[90]

16       Given the admissions and recorded statements of the Officers here, this is a burden the

17   defendants cannot possibly carry.  The Officers, after all, admit that they lacked probable cause

18   for their warrantless intrusion into the Lassiters' home.  And no wonder, for when the Officers

19

20   warrantless entry because also needed exigent circumstances); *State v. Ramirez*, 746 P.2d 344, 346 (Wash. App. 1983).

21   [85] *United States v. Johnson*, 256 F.3d 895, 905 (9th Cir. 2001); *Young*, 867 P.2d at 604 (Probable cause exists "where the facts and circumstances within the arresting officer's

22   knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed.")

23   [86] *Young*, 867 P.2d at 604.
     [87] *Terry v. Ohio*, 392 U.S. 1, 21-22, n.18 (1968).

24   [88] *Id.* at 22; *see also United States v. Wardlow*, 528 U.S. 119, 123-24 (2000) (stating that reasonable suspicion, which is less demanding than probable cause, requires an officer to

25   articulate more than an unparticularized suspicion or hunch).
     [89] *United States v. Stafford*, 416 F.3d 1068, 1073 (9th Cir. 2005).

26   [90] *United States v. Gooch*, 6 F.3d 673, 679 (9th Cir. 1993) (internal citations omitted); *Johnson*, 256 F.3d at 905.

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 17

SEA_DOCS:793111.7 [12120-00200]

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington 98101-2939*
*206 464-3939*

1   charged into the Lassiters' private home, they knew – notwithstanding an unsubstantiated

2   report of a domestic disturbance involving a male threatening a female – that the female: (1)

3   appeared uninjured, (2) assured them that everything was fine and, (3) while appearing upset,

4   was not obviously afraid or angry.[91]   Other circumstances, such as the fact that the police

5   overheard a raised (but not obviously angry) voice or the fact that it took three knocks to bring

6   Mrs. Lassiter to the door, might (or might not) have led them to a hunch or suspicion that some

7   crime was afoot.  But hunches and suspicions don't constitute probable cause.  Life gives rise

8   to any number of occasions for raised voices and delayed responses, the vast majority of which

9   involve innocent behavior.  Lacking probable cause to cross the threshold into the Lassiters'

10   home, the police cannot avail themselves of the exigent circumstances.

11       All of this assumes, for present purposes, that the relevant intrusion is the officer's

12   actual physical entry through the door of the Lassiters' house.  In fact, the Officers entered the

13   curtilage of the Lassiters' home long before that, to which the Fourth Amendment protection

14   against warrantless searches extends.[92]   When the Officers first arrived on the scene, they left

15   the public driveway and sidewalk to investigate.  Officer Thuring, for example, walked to the

16   corner of the house and stood some three to six feet outside, trying to listen to what was

17   happening inside.[93]   There are no sidewalks or pathways leading to the spot where Officer

18   Thuring stood; it was a private area.[94]   And as Officer Thuring readily concedes, he lacked

19   probable cause to believe a crime was being committed right up to the moment he and Officer

20   VanSantford arrested Mr. Lassiter.[95]   Certainly the mere existence of an unsubstantiated call

21   about a potential domestic disturbance, which is all the two Officers knew until they began

22   prowling around the Lassiters' home, didn't give them probable cause to enter the curtilage

23

---

24   [91] Thuring Answer at 4:15-5:2; VanSantford Answer at 4:15-5:2; Smith Decl. p. 63 (Ex. 4 at 19:10-15), p.64 (20:13-14, 18-20), p.87 (43:8-23).
     [92] *Johnson*, 256 F.3d at 901.

25   [93] Thuring Answer at 4:1-3; Smith Decl. p.166 (Ex. 6 at 47:18-48:10).
     [94] Smith Decl. p.168 (Ex. 6 at 49:17-22).

26   [95] Smith Decl. p. 77-79 (Ex. 4 at 33:23-34:2, 34:3-14, 35:15-19), p.94 (50:23-51:4).

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 18

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington   98101-2939*
*206 464-3939*

SEA_DOCS:793111.7 [12120-00200]

1   around the home.  But because determining the extent of that curtilage requires a fact-intensive

2   inquiry regarding four factors—how close to the house is the area, is the area enclosed, what is

3   the use of the area, and what steps taken were to protect the area[96] —and because the Court

4   need not resolve that issue in order to decide this motion, the Lassiters don't seek summary

5   judgment on that issue at this time.  Since the Officers undeniably lacked probable cause to

6   enter the Lassiters' home, the Court may rule that the exigent circumstances exception to the

7   warrant requirement doesn't apply as a matter of law regardless of how extensive the curtilage

8   around the Lassiters' home is.

9       **D.**    **The Emergency Doctrine Does Not Excuse the Officer's Warrantless
        Invasion of the Lassiters' Home Because The Police Did Not Believe
10      Someone Was Immediate Need of Aid and Their Primary Motivation Was
        Investigation, Not Caretaking.**

11

12          Under federal law, a second exception to the warrant requirement exists "if a police

13  officer, while investigating within the scope necessary to respond to an emergency, discovers

    evidence of illegal activity."[97]  This exception is known as the emergency or community
14
    caretaking doctrine.  The emergency doctrine is a very limited and specific exception to the
15
    warrant requirement.  The Washington Supreme Court has not explicitly held that the
16
    emergency doctrine exception applies to article I, section 7 of the Washington Constitution.[98]
17
    But Washington courts have rigorously analyzed claims of emergency under federal law and
18
    have held that exception doesn't apply to Officers who don't both subjectively and objectively
19
    believe that an emergency exists, or whose conduct isn't divorced from a criminal
20
    investigation.[99]
21
            The United States Supreme Court has held that for the police conduct to meet the
22
    emergency exception, their conduct must be "totally divorced from the detection, investigation,
23

24  [96] *Johnson*, 256 F.3d at 901-03.
    [97] *United States v. Cervantes*, 219 F.3d 882, 888 (9th Cir. 2000).
25  [98] *State v. Kinzy*, 5 P.3d 668, 676 n.38 (Wash. 2000).
    [99] *E.g., Kinzy*, 5 P.3d at 386-87 (discussing the elements required under the Fourth Amendment
26  but including a subjective and objective belief of emergency and the emergency devoid of
    criminal, investigation purpose); *State v. Thompson*, 92 P.3d 228, 232-33 (Wash. 2004) (same).

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING          **GARVEY SCHUBERT BARER**
WARRANTLESS ENTRY [C05-5320RBL] - 19                   A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
                                                       *eighteenth floor*
                                                       *1191 second avenue*
SEA_DOCS:793111.7 [12120-00200]                        *seattle, washington   98101-2939*
                                                       *206 464-3939*

or acquisition of evidence relating to the violation of a criminal statute.[100]  The Ninth Circuit has articulated a three-part test for determining whether the emergency doctrine applies:

> 1) The search must not be primarily motivated by intent to arrest and seize evidence;
>
> 2) The police must have reasonable grounds to believe that there is an emergency at hand and in immediate need for their assistance for the protection of life or property, and
>
> 3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.[101]

Like the exigent circumstances exception, the emergency exception is "rigorously guarded,"[102] and the government again bears the "heavy burden" of proving that the exception applies.[103]

The emergency doctrine does not apply here because the police, by their own admission, were motivated by a desire to conduct a criminal investigation.  Hence, by their own admission, their conduct wasn't "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute,[104] but was "primarily motivated by intent to arrest and seize evidence."[105]  In addition, after seeing that Mrs. Lassiter was unharmed, the police lacked reasonable grounds to believe that an emergency justified a full-scale intrusion past her into her house.

> 1. The Officers' Invasion of the Lassiters' Home Was Not "Totally Divorced" from a Criminal Investigation, But Was "Primarily Motivated" by One

The emergency doctrine requires that the police's conduct be "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal

---

[100] *Cady*, 413 U.S. at 441 (emphasis added).
[101] *Cervantes*, 219 F.3d at 888.
[102] *United States v. Stafford*, 416 F.3d 1068, 1073 (9th Cir. 2005).
[103] *Gooch*, 6 F.3d at 679 (internal citations omitted); *Johnson*, 256 F.3d at 905.
[104] *Cady*, 413 U.S. at 441 (emphasis added).
[105] *Cervantes*, 219 F.3d at 888.

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 20

SEA_DOCS:793111.7 [12120-00200]

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington 98101-2939
206 464-3939

1  statute.[106]  Hence, if the police are "primarily motivated" to conduct a criminal investigation,

2  the emergency doctrine does not shield their conduct.[107]

3  This prong requires that the Court "divine the Officers' subjective motivation at the

4  time of making the warrantless entry."[108]  This element is vital because "absent probable cause,

5  examining a government actor's motivation for conducting an emergency search provides a

6  necessary safeguard against pretextual reliance on community caretaking interests to serve

7  criminal investigation and law enforcement functions."[109]

8  Here, the undisputed evidence, which comes in the form of the Officers' own recorded

9  statements during the arrest, the Officers' Answers,[110] and the City's Answer,[111] establishes

10  that the Officers' conduct was not, in fact, "totally divorced" from the desire to conduct a

11  criminal investigation, but was "primarily motivated" by that desire.  Officers Thuring and

12  VanSantford made all of the following statements during their invasion of the Lassiters' home:

13  Officer VanSantford:  Okay. Have a seat. **We're investigating a possible assault,** okay? We're not

14  leaving.[112]

15  . . .

16  Officer Thuring:  Okay. He's also fighting with the police **when we're here to investigate domestic**

17  **violence.**[113]

18  . . .

19  Officer Thuring:  We're required by law **to come in and**

20  **investigate.** That's what we're doing.[114]

21  . . .

22  ---

[106] *Cady*, 413 U.S. at 441.

23  [107] *Cervantes*, 219 F.3d at 889-90; *Stafford*, 416 F.3d at 1074.

[108] *Stafford*, 416 F.3d at 1074.

24  [109] *Cervantes*, 219 F.3d at 890.

[110] Thuring Answer at 4:1-3, 20-23; VanSantford Answer at 4:1-3, 20-23.

25  [111] City's Answer at 4:11.

[112] Smith Decl. p.8 (Ex. 2 at 1:25-26) (emphasis added).

26  [113] Smith Decl. p.12 (Ex. 2 at 5:15-16) (emphasis added).

[114] Smith Decl. p.12 (Ex. 2 at 5:20-21) (emphasis added).

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 21

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464-3939

Officer Thuring:          **We need to find out** by law if there's an
                         assault that took place here.[115]

                                   . . .

Officer Thuring:          **We have a requirement to make sure -
                         to find out if an assault occurred or not.**
                         If he won't follow the lawful instructions
                         and cooperate then we have to take him
                         into custody **so we can investigate**. . . .[116]

The Officers' own statements during the course of the arrest make their intention to investigate crystal clear.  So did Officer Thuring's testimony at the hearing on the motion to dismiss:

David Smith: Okay. And you're trying to find out if in fact the crime has occurred and that's why you want to talk to people inside, correct?

Officer Thuring: Ultimately, yes.[117]

                                   . . .

Ms. Dalton: So your purpose on going inside the house was to investigate the potentiality for a domestic violence assault?

Officer Thuring: To investigate a report of a domestic violence assault.[118]

Importantly, at no time during the arrest did either officer express concern for either of the Lassiters' safety or state that they had entered the house in response to what they believed was an ongoing, life-threatening situation.  The Officers never asked either plaintiff whether they were okay.  They didn't interview Mrs. Lassiter, ask her if she needed help, ask her if she was hurt, or ask her if she needed emergency care.

The Officers' actions speak more loudly than their words.[119]  After barging into the

---

[115] Smith Decl. p.17 (Ex. 2 at 10:1-2) (emphasis added).
[116] Smith Decl. p.18 (Ex. 2 at 11:10-13) (emphasis added).
[117] Smith Decl. p.78 (Ex. 4 at 34:22-24).
[118] Smith Decl. p.134 (Ex. 6 at 15:12-14).
[119] *Cervantes*, 219 F.3d at 891 (relying upon officer's actions after the search—officer called special unit to deal with methamphetamine lab and evacuated apartment building—to shed light onto officer's motivations).

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464-3939

Lassiters' home, they did nothing that revealed a concern for anyone's safety.  For example, they didn't sweep the home to be sure if anyone else was in need of assistance; indeed, they didn't ask either of the Lassiters whether anyone else was home.

There are no genuine issues of material fact regarding the Officers' motivation in invading the Lassiters' home.  Hence, they can't avail themselves of the emergency doctrine, and the Court may grant summary judgment on that basis alone.

> 2.      The Officers Lacked Reasonable Grounds to Believe an Emergency Was Under Way and that Someone Was in Immediate Need of Their Help

The emergency doctrine recognizes that in addition to enforcing criminal laws, the police also function as community caretakers.[120]  Thus, to satisfy the emergency doctrine, the Officers must have reasonable grounds to suspect that someone needs their help, not that someone is guilty of a crime.  The Officers' conduct is measured objectively, taking into consideration the Officers' collective knowledge at the time.[121]

Here, the Officers lacked reasonable grounds – as they stood in the Lassiters' doorway chatting with Mrs. Lassiter – to believe that a life-threatening emergency was under way.  Before entering the Lassiters' home, the Officers had but a handful of "facts" – namely an unsubstantiated 911 call and the muffled sounds of a male using a raised voice (without sounding obviously angry) – to suggest that a male might have assaulted a female inside the home.  Yet when the female opened the door, she appeared uninjured and while she looked upset, she didn't appear frightened and she reported that all was well.[122]  At this point, the police lacked reasonable grounds to believe that a life-threatening emergency was afoot, which explains why they never claimed that they did during the course of their invasion of the Lassiters' home.  They conceded as much on the audiotape.  When Mrs. Lassiter pointed out that they saw that she was "safe" when she answered the door, their response was, "We don't

---

[120] *Stafford*, 416 F.3d at 1073.
[121] *Id.*
[122] Smith Decl. p.63 (Ex. 4 at 19:10-15), p.64 (20:13-14; 18-20), p.87 (43:8-23).

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 23

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
*eighteenth floor*
*1191 second avenue*
*seattle, washington  98101-2939*
*206 464-3939*

SEA_DOCS:793111.7 [12120-00200]

1    know that you weren't assaulted already."[123]  And that's precisely why the Officers entered

2    their home: to investigate whether there had been an earlier assault.

3          The Officers undisputedly lacked reasonable grounds to believe an emergency was

4    under way when they barged past Mrs. Lassiter into her home.  Accordingly, the Court should

5    grant the Lassiters' motion for partial summary judgment on that basis, too.

6                              **V.    CONCLUSION**

7          "Physical entry of the home is the chief evil against which the wording of the Fourth

8    Amendment is directed."[124]  It is for this reason that searches inside a home without a warrant

9    are presumptively unreasonable,[125] and why the government has the "heavy burden" of

10   providing that one of a few "rigorously guarded" exceptions justified the warrantless invasion

11   of a person's home.

12         This is a burden defendants VanSantford and Thuring cannot possibly meet here.  It is

13   uncontested that the Officers invaded the Lassiters' home – that most private of sanctuaries –

14   without a warrant, without probable cause, and without any thought they were responding to an

15   ongoing life-threatening emergency. Accordingly, the Court should grant the Lassiters' motion

16   for partial summary judgment.

17         DATED this 6th day of April, 2006.

18                              GARVEY SCHUBERT BARER

19

20                              By   /s/ David H. Smith
                                      David H. Smith, WSBA #10721
21                                    Attorneys for Plaintiffs

22

23

24

---

25   [123] Smith Decl. p.18 (Ex. 2 at 11:19-22).
     [124] *Payton*, 445 U.S. 573, 585 (1980).
26   [125] *Id.* at 586.

MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
WARRANTLESS ENTRY [C05-5320RBL] - 24

GARVEY SCHUBERT BARER
A PARTNERSHIP OF PROFESSIONAL CORPORATIONS
eighteenth floor
1191 second avenue
seattle, washington  98101-2939
206 464-3939

SEA_DOCS:793111.7 [12120-00200]