UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KENNETH CHARLES LASSITER and ALPHA DORIS D. LASSITER,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BREMERTON, MATTHEW THURING, JOHN VAN SANTFORD, ROBERT FORBES, BREMERTON POLICE CHIEF, et al.,<br><br>Defendants. | Case No. C05-5320 RBL<br><br>ORDER GRANTING DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT ON QUALIFIED IMMUNITY |

I. SUMMARY

This matter comes before the Court on Defendants Matthew Thuring and John Van Santford's cross-motion for summary judgment. (Dkt. No. 59). The Defendant officers seek a ruling as a matter of law that they are entitled to qualified immunity for their warrantless entry into the Lassiters' home.[1] Having reviewed the parties' submissions and determining that oral argument is not necessary for the

---

[1] In an earlier motion for partial summary judgment, Plaintiffs asked this court to rule as a matter of law that Defendant officers did not have probable cause to enter the Lassiters' home. The court denied that motion. In the present matter, Defendants seek a ruling as a matter of law, as a sub-issue of qualified immunity, that they did have probable cause to enter the Lassiters' home.

ORDER
Page - 1

disposition of this motion, the Court hereby GRANTS Defendants' motion. The reasons for the Court's order are set forth below.

## II. BACKGROUND

The following facts are set forth in a light most favorable to Plaintiffs:

On July 25, 2003, Kimberly Ulbright called 911 to report her neighbor, Plaintiff Kenneth Lassiter, threatening his wife with physical violence. The 911 operator recorded and/or Ms. Ulbright overheard Mr. Lassiter making the following statements:

- "Your job is to obey me…right now";

- "Put that fucking phone down and get to work";

- "I will hurt you";

- "You stop your horseshit and stop it now…. That's your own fucking throat and you're not going to cut mine";

- "And you're not going to be a God damn hero"; and

- "You God damn people are too fucking stupid."

The 911 dispatcher reported the call to Defendant Officers John Van Santford and Matthew Thuring and informed them that: 1) a neighbor had reported sounds of a man yelling; 2) the male was attempting to restrain the woman; 3) the woman was crying and saying "let go"; and, 4) the man threatened to cut the woman's throat with a knife.[2]

After arriving at Plaintiffs' residence, Defendants entered the fenced yard to try and overhear the voices coming from inside the Lassiters' home. Both Defendants heard muffled yelling, but could not discern whether the voice sounded angry. As the officers approached the entry, a male voice said, "stay away from the window and don't say anything."

---

[2]The Court has reviewed the 911 call tape, the dispatcher's communications with the officers, as well as the 911 call transcript.

Defendants knocked three times on the Lassiters' door. Mrs. Lassiter opened the door only part way, concealing herself, and denied that anyone else was in the home. Mrs. Lassiter did not appear to be hurt, and she told the Defendants everything was fine. Defendants entered the Lassiters' home without a warrant and without consent.

### III. DISCUSSION

A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answer to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy Corp.*, 68 F.3d at 1220.

B. <u>Probable Cause Standard</u>

Police officers need both probable cause and exigent circumstances to lawfully enter a home without a warrant. *See Kirk v. Louisiana,* 536 U.S. 635, 638 (2002). Probable cause exists when the facts and circumstances within the officers' knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed. *See Ybarra v. Illinois,* 444 U.S. 85, 91 (1979). Courts evaluate

the reasonableness of a warrantless search in view of the "totality of the circumstances" as viewed from the perspective of the police officers at the time of the entry. *See United States v. Lindsey,* 877 F.2d 777, 781 (9th Cir. 1989). "[T]he question of whether a reasonable officer could have believed probable cause or reasonable suspicion) existed to justify a search or an arrest is 'an essentially legal question that should be determined by the district court at the earliest possible point in the litigation.' Where the underlying facts are undisputed, a district court must determine the issue on motion for summary judgment." *ActUp!Portland v. Bagley,* 988 F.2d 868, 878 (9th Cir. 1993).

C. Qualified Immunity

Defendants argue they are qualifiedly immune because they acted reasonably and in accordance with the law. (Dkt. No. 59 at 11). Plaintiffs respond Defendants are not entitled to qualified immunity because the officers' conduct violated their Fourth Amendment rights and reasonable officers could not disagree on the legality of their actions. (Dkt. No. 68 at 15).

Defendants in a § 1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular individual. *Id.* at 819. Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *ActUp!Portland,* 988 F.2d at 872-73. In analyzing a qualified immunity defense, the Court must determine: 1) whether a constitutional right has been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and 2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz,* 533 U.S. 194, 205 (2001).

1. Constitutional Violation

Viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs have not offered sufficient evidence that their Fourth Amendment rights were violated based on Defendants' warrantless entry. To be sure, courts emphasize that exceptions to the warrant requirement are "few in number and carefully delineated." *United States v. United States District Court,* 407 U.S. 297, 318 (1972). However, the "Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person is in need of immediate aid." *See United States v. Brooks,* 367 F.3d 1128, 1136 (9th Cir. 2004).[1]

As an initial matter, Plaintiffs assert Defendants lacked the requisite information from the 911 operator to justify a warrantless entry. A review of the 911 tape, however, demonstrates that the following facts were actually radioed to Defendants: 1) a neighbor reported sounds of a man yelling; 2) the male was attempting to restrain the woman; 3) the woman was crying and saying "let go"; 4) the man threatened to cut the woman's throat with a knife.

Moreover, even under Plaintiffs' facts, Defendants arrived and heard a voice say, "stay away from the window and don't say anything." Even if Mrs. Lassiter now claims she only partially opened the door because she was underdressed, Mrs. Lassiter still lied when Defendants asked if she was alone. Domestic violence victims tend to be less than forthcoming about the harms to which they were or will likely be exposed at the hands of an aggressor who remains on the scene. *See Mincey v. Arizona,* 437 U.S. 385, 394 (1978); *United States v. George,* 883 F.2d 1407, 1412 (9th Cir. 1989). Given the information they had from the 911 operator, the sounds they heard on arrival, and Mrs. Lassiter's choice to conceal herself and

---

[1] Two other circuits have even held that a 911 call reporting a domestic emergency, without more, may be enough to support a warrantless search of a home. *See, e.g., United States v. Richardson,* 208 F.3d 626, 630 (7th Cir. 2000) (determining that a 911 call where the caller identified himself and stated that the body of a woman who had been raped and murdered could be found in the basement of a particular address was enough to support a warrantless search under the exigent circumstances exception); *United States v. Cunningham,* 133 F.3d 1070, 1072-73 (8th Cir. 1998) (holding that a 911 call from a woman who identified herself and claimed that she was being held against her will justified protective sweep of dwelling).

ORDER
Page - 5

then lie about who was in the home, Defendants were entitled to enter the Lassiters' home to prevent physical harm to Mrs. Lassiter. The public expects police officers to secure and ensure their safety and, under the facts of this case, the Constitution does not compel these police officers to disappoint the public's expectations.

Plaintiffs have produced insufficient evidence of a constitutional violation based on Defendants' warrantless entry. Nevertheless, if a reviewing court determines a constitutional violation occurred, this Court alternatively examines the second step of the qualified immunity analysis to determine whether Defendants made a reasonable mistake about what the law requires.

2. <u>Clearly Established Right</u>

The second inquiry for qualified immunity defense is whether, at the time of the officers' actions, it was "clearly established" that they were violating the Lassiters' Fourth Amendment rights. *See Brosseau v. Haugen,* 543 U.S. 194, 199 (2004). In order to be clearly established, the right at issue must be sufficiently defined in relation to the particular facts. *See Anderson v. Creighton,* 483 U.S. 637, 641-42 (1987) (the general principle that a person has a right to be free from warrantless home searches absent probable cause and exigent circumstances is not sufficient). Although Ninth Circuit decisions such as *LaLonde, Martinez,* and *Brooks* explore exigent circumstances and probable cause surrounding domestic disputes,[2] the decisions are not sufficiently clear to put a reasonable officer on notice that the conduct in question here would be an apparent constitutional violation. *See Saucier,* 533 U.S. at 205-06. Objective reasonableness

---

[2] In *LaLonde v. County of Riverside,* 204 F.3d 947, 956 (9th Cir. 2000), the court held that exigency did not justify a warrantless entry in a domestic disturbance despite a neighbor's phone call to police that reported plaintiff owned a gun. In *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2004), the court held that an exigency did not justify a warrantless entry in response to a domestic violence dispute where an officer saw the victim outside the home and did not believe that evidence of a crime would be found inside the home. By contrast, in *Brooks,* the court held that the exigent exception did apply where hotel guests heard loud fighting, the police officers interviewed the 911 caller prior to entry, the room was in disarray upon entering the door, and the victim was out of sight. 367 F.3d at 1135. The present matter is more analogous to *Brooks* than to *LaLonde* or *Martinez.*

is met if officers of reasonable competence could disagree on the legality of the action. *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

Here, even viewing the evidence in the light most favorable to the Plaintiffs, officers of reasonable competence could disagree on whether the exigency exception to the warrant requirement applied in this situation. *Malley,* 475 U.S. at 341. Defendants came to the Lassiters' home in response to a 911 call in which the Lassiters' neighbor reported sounds of a fight, a man yelling racial slurs and trying to restrain a woman, and a threat that the man would "cut her throat." The parties do not dispute that Defendants heard muffled yelling when they arrived at the Lassiters' home. The parties also do not dispute that Defendants heard a voice say "stay away from the window and don't say anything." The parties also agree that Mrs. Lassiter answered the door with only part of her body visible to Defendants, making it impossible to ascertain whether she was injured, and, finally, that she lied about who was in the home.

*Saucier* provides that the qualified immunity doctrine shields officers from reasonable legal mistakes. 533 U.S. at 205. Accordingly, Defendants have provided sufficient evidence that supports a reasonable belief that entering the Lassiters' home was necessary to secure Mrs. Lassiter's safety.

## V. CONCLUSION AND ORDER

For the reasons discussed above, the Court GRANTS Defendants' cross-motion for summary judgment (Dkt. No. 59) because they are entitled to qualified immunity for their warrantless entry into the Lassiters' home. Accordingly, all claims against Defendant officers are DISMISSED with prejudice. In addition, Defendants Matthew Thuring and John Van Santford's motion to compel discovery (Dkt. No. 163) is DENIED as moot.

DATED this 18th day of September, 2006.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE