UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KENNETH CHARLES LASSITER and ALPHA DORIS D. LASSITER,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF BREMERTON, MATTHEW THURING, JOHN VAN SANTFORD, ROBERT FORBES, BREMERTON POLICE CHIEF, et al.,<br><br>Defendants. | Case No. C05-5320  RBL<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR WRONGFUL ARREST |

I. SUMMARY

This matter comes before the Court on Defendants Matthew Thuring and John Van Santford's motion for summary judgment. (Dkt. No. 149).  Defendant officers seek a ruling as a matter of law that they are entitled to qualified immunity for arresting Mr. Lassiter.  Having reviewed the parties' submissions and determining that oral argument is not necessary for the disposition of this motion, the Court hereby GRANTS Defendants' motion.  The reasons for the Court's order are set forth below.

ORDER
Page - 1

## II. BACKGROUND

The following facts are set forth in a light most favorable to Plaintiffs:

On July 25, 2003, Kimberly Ulbright called 911 to report her neighbor, Plaintiff Kenneth Lassiter, threatening his wife with physical violence. The 911 operator recorded and/or Ms. Ulbright overheard Mr. Lassiter making the following statements:

- "Your job is to obey me…right now";

- "Put that fucking phone down and get to work";

- "I will hurt you";

- "You stop your horseshit and stop it now…. That's your own fucking throat and you're not going to cut mine";

- "And you're not going to be a God damn hero"; and

- "You God damn people are too fucking stupid."

The 911 dispatcher reported the call to Defendant Officers John Van Santford and Matthew Thuring and informed them that: 1) a neighbor had reported sounds of a man yelling; 2) the male was attempting to restrain the woman; 3) the woman was crying and saying "let go"; and, 4) the man threatened to cut the woman's throat with a knife.[1]

After arriving at Plaintiffs' residence, Defendants entered the fenced yard to try and overhear the voices coming from inside the Lassiters' home. Both Defendants heard muffled yelling, but could not discern whether the voice sounded angry. As the officers approached the entry, a male voice said, "stay away from the window and don't say anything."

Defendants knocked three times on the Lassiters' door. Mrs. Lassiter opened the door only part way, concealing herself, and denied that anyone else was in the home. Mrs. Lassiter did not appear to be

---

[1] The Court has reviewed the 911 call tape, the dispatcher's communications with the officers, as well as the 911 call transcript.

ORDER
Page - 2

hurt, and she told the Defendants everything was fine. Defendants entered the Lassiters' home without a warrant and without consent.

Defendants informed the Lassiters that they were investigating a possible assault and instructed Mr. Lassiter to sit down. Mr. Lassiter replied: "No. I'm not here to discuss this with you." (Dkt. No. 46, Exhibit 2, 1:22-2:3). Defendants again instructed Mr. Lassiter to sit down. Mr. Lassiter did not respond. *Id.* Defendants then arrested Mr. Lassiter.

### III. DISCUSSION

A. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answer to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy Corp.*, 68 F.3d at 1220.

B. <u>Qualified Immunity</u>

Plaintiffs argue arresting Mr. Lassiter violated the Fourth Amendment because refusing to answer questions and ignoring an order to sit down do not create probable cause to arrest. (Dkt. No. 165 at 8).

Defendants argue that probable cause supported Mr. Lassiter's arrest for obstruction based on his failure to cooperate and the total circumstances surrounding the arrest. (Dkt. No. 149 at 13). Defendants also contend qualified immunity shields them from suit because they complied with the law, procedure, and training. (Dkt. No. 149 at 16).

Defendants in a § 1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular individual. *Id.* at 819. Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *ActUp!Portland,* 988 F.2d at 872-73.

In analyzing a qualified immunity defense, the Court must determine: 1) whether a constitutional right has been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and 2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz,* 533 U.S. 194, 205 (2001).

1. Constitutional Violation

Viewing evidence in the light most favorable to Plaintiffs, Plaintiffs have not offered sufficient evidence that their Fourth Amendment rights were violated based on Mr. Lassiter's arrest. To be sure, Plaintiffs strongly dispute whether Mr. Lassiter walked away from Defendants towards the kitchen, citing inconsistencies between Defendants' police reports and Mr. Lassiter's tape recording the arrest. However, it is undisputed that the following facts were radioed to Defendants: 1) a neighbor reported sounds of a man yelling; 2) the male was attempting to restrain the woman; 3) the woman was crying and saying "let go"; 4) the man threatened to cut the woman's throat with a knife.

ORDER
Page - 4

And it is also undisputed that Mr. Lassiter ignored Defendants' repeated instructions to sit down. The scene was chaotic, evidenced by the yelling and screaming from the tape recording. Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed. *Ybarra v. Illinois,* 444 U.S. 85, 91. The court is particularly sensitive to the fact that domestic violence situations can be volatile and "violence may be lurking and explode with little warning." *See United States v. Martinez,* 406 F.3d 1160, 1164 (9th Cir. 2005). Indeed, "more officers are killed or injured on domestic violence calls than any other type of call." *Id.* (1979).

Defendants properly entered the Lassiters' home to secure Mrs. Lassiter's safety. Mr. Lassiter's subsequent interference with the officers' duties, by refusing to sit down, is sufficient to establish probable cause to arrest for obstruction, especially considering the chaos surrounding the entry. *See State v. Contreras,* 92 Wn. App. 307, 312, 966 P.2d 915 (1998) (a warrantless arrest of detainee for obstructing law enforcement officer was valid even though the detainee correctly claimed that his refusal to speak to police could not form basis of obstruction claim; detainee also disobeyed order to keep hands up and exit vehicle, and gave false name). Although the interaction between Defendants and Mr. Lassiter involve factual disputes, the undisputed facts are sufficient to cause a reasonably prudent person to believe that a crime had been committed. *Ybarra,* 444 U.S. at 91.

Plaintiffs have produced insufficient evidence of a constitutional violation based on Defendants arresting Mr. Lassiter. Nevertheless, if a reviewing court determines a constitutional violation occurred, this Court alternatively examines the second step of the qualified immunity analysis to determine whether Defendants made a reasonable mistake about what the law requires.

2. <u>Clearly Established Right</u>

The second inquiry for qualified immunity defense is whether, at the time of the officers' actions, it was "clearly established" that they were violating the Lassiters' Fourth Amendment rights. *See Brosseau v. Haugen,* 543 U.S. 194, 199 (2004). In order to be clearly established, the right at issue must be sufficiently defined in relation to the particular facts. *See Anderson v. Creighton,* 483 U.S. 637, 641-42 (1987). Objective reasonableness is met if officers of reasonable competence could disagree on the legality of the action. *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

Here, even viewing the evidence in the light most favorable to Plaintiffs, officers of reasonable competence could disagree on whether Mr. Lassiter's refusal to sit obstructed Defendants from securing Mrs. Lassiter's safety. Defendants came to the Lassiters' home in response to a 911 call in which the Lassiters' neighbor reported sounds of a fight, a man yelling racial slurs and trying to restrain a woman, and a threat that the man would "cut her throat." The parties do not dispute that Defendants heard muffled yelling when they arrived at the Lassiters' home. The parties also do not dispute that Defendants heard a voice say "stay away from the window and don't say anything." The parties also agree that Mr. Lassiter refused repeated instructions to sit down when Defendants entered the Lassiters' home.

*Saucier* provides that the qualified immunity doctrine shields officers from reasonable legal mistakes. 533 U.S. at 205. Accordingly, Defendants provide sufficient evidence that supports a reasonable belief that Mr. Lassiter's refusal to sit down, considering the tense circumstances, justified his arrest for obstruction.

## V. CONCLUSION AND ORDER

For the reasons discussed above, the Court GRANTS Defendants' motion for summary judgment (Dkt. No. 149) on Plaintiffs' claim against Officers Matthew Thuring and John Van Santford for unlawful arrest.

DATED this 5th day of October, 2006.

*/s/ Ronald B. Leighton*
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE