HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KENNETH CHARLES LASSITER and
ALPHA DORIS LASSITER,

Plaintiffs,

v.

CITY OF BREMERTON, et al.,

Defendants.

Case No. C05-5320RBL

ORDER

THIS MATTER comes before the above entitled Court on Motions for Reconsideration [Dkt. Nos. 333, 335, 337] and various cross motions for summary judgment and partial summary judgment [Dkt. Nos. 313, 316, 318, 319, 324, 326]. The Court has reviewed the written materials submitted by the parties and considered the arguments of counsel during oral argument.

**FACTS**

The relevant facts can be gleaned from the following chronology of events:

<u>July 25, 2003</u> - Ms. Kimberly Ulbright, then neighbor to the Lassiters, called 9-1-1 to report noises and threats coming from the Lassiter home.

<u>1:18 p.m.</u> - Officers Thuring and VanSantford were advised of a Domestic Violence Assault taking place at the Lassiters' address. They were told that the male was reported to have made verbal threats to "cut her throat." They were also told that the female inside was yelling for the male to "let go of her."

1:22 p.m. - The officers arrived at the scene in uniform. They could hear a male inside yelling at someone.[1]

The officers went to the door and knocked. They knocked four different times and announced themselves as Police Officers and directed the occupants to come to the door. Finally a woman came to the door, peered out from behind the door and said there was no problem and that there was nobody else in the house. Mrs. Lassiter acknowledges that she knew she was talking to police officers, that she lied to them and that she lied to them purposefully.

The officers entered the residence and encountered Mr. Lassiter. As the police officers entered (or just prior), Mr. Lassiter pushed a tape recorder to play. The audio portion of events were captured on tape from that moment. The tape reveals that the police officers told Lassiter to sit down on multiple occasions and it is clear that he refused to comply on multiple occasions.

The officers took physical control of Mr. Lassiter and handcuffed him. It appears from the evidence that there were two separate altercations with Mr. Lassiter before he was removed from the house and transported to jail. The parties dispute whether Lassiter was moving toward the kitchen as officers told him to sit down. The parties also dispute whether Mrs. Lassiter physically interfered with the officers' attempt to physically control Mr. Lassiter.

In their reports, both officers stated they repeatedly told Mr. Lassiter to stop or to stop and sit down. The tape, however, reveals that what the officers said repeatedly was "sit down".

In the altercation with the officers, Mr. Lassiter suffered injuries and an aid car was summoned.

Kenneth Lassiter was booked for third degree assault, Obstructing a Police Officer and Resisting Arrest. The officers requested that Mrs. Lassiter be charged via summons for Obstructing a Police Officer.

---

[1] In an earlier Order, the Court adopted a fact which plaintiffs now claim to be hotly contested. [Dkt. #181, 9/8/06] The police officers told the Lassiters (audible on tape recording) and stated in their reports that they heard a male voice yell "stay away from the window and don't say anything." On October 19, 2006, in a declaration filed in support of a motion for reconsideration [Dkt. #223], Kenneth Lassiter for the first time indicated to the Court that the officers were lying about hearing that statement. On January 30, 2007, in a pleading referencing "newly discovered evidence" [Dkt. #333], Mrs. Lassiter denies that her husband said "stay away from the window and don't say anything." The Court has not relied upon this disputed fact in reaching its decision regarding pending motions. No one has refuted the officers' claim to have heard a male voice before entering the home.

ORDER
Page - 2

  <u>July 28, 2003</u> - Kenneth Lassiter was charged in Count I of a Criminal Complaint with Obstructing a Law Enforcement Officer and in Count II with Resisting Arrest. The prosecuting attorney was defendant, Claire Bradley. On the same day, Mrs. Lassiter was charged with Obstructing a Law Enforcement Officer.

  <u>December 17, 2003</u> - Lt. Burchett sent a memo to officers VanSantford and Thuring regarding the Lassiter case. Capt. Wolfe and Sgt. Olan were copied. The background section of the memo read as follows:

> At a training seminar I recently went to, the instructor warned of a growing trend among defense attorneys. They target minor misdemeanor cases from municipal courts as law suit candidates. The officers usually prepare far less for these cases and it is easier for the attorneys to trip them up with their word games in court. Once the poor testimony is part of the court record, it is an easy payday for the leeches. Simon Stoker, our assistant city attorney (civil), wants us to win the criminal case so the civil case goes away. The key is looking and sounding professional, confident and well prepared. As our instructor pointed out, the jury expects you to sound like Supreme Court justices up on the stand. The defense team leads the jury to believe that anything less and you are incompetent officers. Incompetent officers do not win in court.

The memo then went on to offer advice to the officers on how best to prepare for their testimony. Nowhere in the memo is there any suggestion that the officers should lie or shade the truth.

  <u>February 27, 2004</u> - In a pre-trial motion to dismiss, Officer Thuring testified about the July 25, 2003 incident. He repeated his story that Mr. Lassiter was told to stop several times before being seized by the officers. He also testified that in his view he did not have probable cause to arrest someone prior to the time Mr. Lassiter refused to obey lawful commands.

  <u>October 14, 2004</u> - The Lassiters signed a Claim for Damages seeking $5,000,000 from the City of Bremerton and alleging False Arrest, False Imprisonment, Intentional Infliction of Emotional Distress, violation of Civil Rights Act, 42 U.S.C.A. §1983, physical injuries and substantial emotional distress.

  <u>October 15, 2004</u> - The Lassiters, through their attorney, reveal the existence of the tape and demand resolution of the civil claims and the criminal charges then pending. The Lassiters demand that pending charges be dismissed because of the false swearing of VanSantford and Thuring in their narrative reports and perjury of Thuring in his pre-trial testimony. The letter reminds the City that violation of the Civil Rights Act allows the Lassiters to recover attorney's fees and costs, plus compensatory and punitive damages. The false swearing and perjury allegations were based principally upon the difference between the command to "stop" as stated in the narrative reports and the commands to "sit down" as heard on the

tape. The letter also suggested that the tape proves that Mr. Lassiter was standing still and not moving toward the kitchen when ordered to sit down. Finally, the letter asked that the criminal charges be dismissed and that the City not inform the officers of the tape. The letter cites RPC 3.8(c) (Special Responsibility of a Prosecutor), RPC 3.3 (Candor Towards the Tribunal) and RPC 4.3(a) (Dealing with Unrepresented Person). The City is reminded in the letter that a prosecutor's client is the public and he/she must resist the temptation to view the police department or its employees as a "client " or otherwise use their office to protect police officers from civil liability. The letter also states:

> "the Kitsap County Prosecuting Attorney's Office has a conflict between its duty to enforce the criminal statutes of our state and its financial interest to maintaining or renewing its contract with the City. If the Kitsap County Prosecuting Attorney's Office puts its financial interest first, it will be tempted to 'white wash' the officers' conduct and continue the prosecution. If it does not, it must dismiss the criminal charges immediately and refer the matter to the State Patrol who can conduct an independent investigation of Officers VanSantford and Thuring's misconduct. But it cannot do both, as it is too late for the officers to purge themselves of their false swearing and perjury." See RCW 9A.72.060.

<u>October 17, 2004</u> - A Prosecutor was allowed to listen to the tape, but not to keep a copy for future review.

<u>October 18, 2004</u> - Charges against the Lassiters were dismissed based on an assumption by the prosecutor that there may have been serious credibility issues with the officers.

<u>October 19, 2004</u> - The City referred the matter to the Washington State Patrol for a criminal affairs investigation. The Chief of Police stated in the referral letter that "it would be my desire that WSP also conduct the Internal Affairs investigation relating to the incident." The officers were placed on administrative leave pending the outcome of the investigation.

<u>December 16, 2004</u> - The WSP issued its report. It cleared the officers of criminal acts involving false swearing or perjury. The report indicated that the tape had been altered and identified a gap of less than ½ second in the tape. The officers were immediately reinstated to active duty.

<u>January 3, 2005</u> - The prosecutor's office issued a decline to prosecute notice.

<u>January 5, 2005</u> - Chief Forbes informed the officers that given the results of the criminal investigation and the subsequent prosecution decline, along with the absence of violations of Department Policy, there would be no internal investigation conducted concerning the issues brought forth in the claim submitted by Kenneth and Alpha Lassiter dated October 15, 2004. The City later reimbursed the officers for legal fees incurred in connection with the Lassiters' allegations against them.

1    <u>January 14, 2005</u> - A meeting was convened between the Lassiters' counsel; Chief Forbes, the Assistant City Attorney for Bremerton; Bremerton's Risk Manager; Capt. Craig Roger and Kitsap County Prosecutor Claire Bradley.  At the meeting the City denied the claim for damages filed by the Lassiters. Claire Bradley presented Kenneth Lassiter with a plea agreement and told Lassiter that unless he pled guilty to the misdemeanor charge of Tampering with Physical Evidence, he would be charged with Forgery and Attempted Theft in the First Degree, both felonies.

<u>January 21, 2005</u> - Counsel for Mr. Lassiter wrote to challenge the tampering allegation against his client.  He did not state in the letter that Mrs. Lassiter was the only one to manipulate the recorder.

<u>January 25, 2005</u> - Fausto Poza offered an opinion letter on behalf of plaintiffs stating that the anomaly on the tape (.924 seconds) resulted from a momentary depression of the record key which is not unusual and may have been unintentional.

<u>January 27, 2005</u> - Counsel for Mr. Lassiter again wrote to challenge the tampering allegations against his client.  Again, he did not say Mrs. Lassiter was the only one to manipulate the recorder or to have access to the tape.  He did say that Mr. Lassiter did not transcribe the tape.

<u>May 16, 2005</u> - The Lassiters filed their lawsuit against the City of Bremerton and others.

<u>May 27, 2005</u> - Charges were filed against Kenneth Lassiter for Obtaining a Signature by Deception or Duress; Tampering with Physical Evidence; and Obstructing a Law Enforcement Officer.  A supplemental Certification for Determination of Probable Cause was signed by defendant, James Mitchell, which accurately states the facts as provided to him in the officers' reports and the Washington State Patrol Report of December 16, 2004.  Mitchell accurately informed the Court that the original charge of Obstructing an Officer was earlier dismissed based on the assumption by the prosecutor that there may have been serious credibility issues with the officers.  That assumption was based on the tape recording that the Washington State Patrol said was altered.  Mitchell failed to tell the Court that leave had not yet been obtained to re-file the Obstructing charge.

<u>September 29, 2005</u> - Kitsap County's action against Mr. Lassiter was dismissed for lack of evidence.  In Mr. Lassiter's motion, the Court was informed that only Mrs. Lassiter, not Mr. Lassiter, handled the tape and tape recorder.

ORDER
Page - 5

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted if, after viewing all the pleadings, affidavits, depositions, admission and all reasonable inferences drawn therefrom in favor of the non-moving party, the trial court finds: (1) that there is no genuine issue as to any material fact; (2) that all reasonable persons could reach only one conclusion; and (3) that the moving party is entitled to judgment as a matter of law.

All facts and reasonable inferences are considered in the light most favorable to the non-moving party, but the non-moving party must produce competent and admissible evidence in demonstrating an actual dispute as to material terms or facts, not mere speculation, conclusion, or opinion. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The non-moving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Ser., Inc.,* 809 F.2d 626, 630 (1986).

## DISCUSSION

The plaintiffs' second amended complaint [Dkt. #37] identifies eighteen claims against various defendants. In prior orders the Court has dismissed certain claims and allowed certain others to stand. The pending motions by the defendants challenge the legal sufficiency of the remaining claims. Plaintiffs affirmatively seek resolution of some claims in their favor as a matter of law. Each claim contained within the second amended complaint will be addressed in turn.

<u>First Claim</u> - violation of 42 U.S.C. §1983 by Officers VanSantford and Thuring.

The Court in a prior order [Dkt. #189] has ruled that the intrusion into the Lassiters' home by the officers was justified. The officers had probable cause and exigent circumstances to support their warrantless entry into the home. In another order [Dkt. #210] the Court ruled that the arrest of Mr. Lassiter for Obstruction was supported by probable cause. The risk of harm to both the police and the occupants of a home is minimized if the officers routinely exercise unquestioned command of the situation. *Michigan v. Summers*, 452 U.S. 692, 702-3 (1981). The audio tape of the event clearly documents Mr. Lassiter's refusal to comply with lawful commands issued by the officers in their attempt to gain control of the scene.

Mrs. Lassiter was also charged (by summons) with Obstruction.  The essential elements of the offense are: (1) that the action or inaction in fact hinder, delay or obstruct; (2) that hindrance, delay or obstruction be of a public servant in the midst of discharging his official powers or duties; (3) knowledge by the defendant that the public servant was discharging his duties; and (4) that the action or inaction be done knowingly (or willfully) by the obstructor.  *State v. CLR*, 40 Wn. App. 839, 841-42 (1985).

In one of her many declarations filed with the Court [Dkt. #224, 10/19/06] Mrs. Lassiter said:

> "I didn't want the officers to bother Kenn because his bi-polar disorder makes him fearful of authority figures like police officers.  This is why I told the officers no one else was home."

From this statement the Court can only conclude that Mrs. Lassiter knew that she was dealing with uniformed police officers carrying out official duties, that she lied to them willfully for the express purpose of preventing them from contacting her husband, the alleged spousal abuser.  The officers had probable cause to believe Mrs. Lassiter committed the crime of obstruction of a police officer.

The Court previously denied defendants' motion for summary judgment on the issue of excessive force [Dkt. #258].  That issue will be tried to a jury.

<u>Second Claim</u> - Violation of Article I §7 of the Washington Constitution.

Art. I §7 of the Washington Constitution provides:

> No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

For the same reasons the Court granted the defendants' motion for summary judgment on the issue of illegal entry into the Lassiters' home [Dkt. #189] claim 2 is also dismissed.

<u>Third Claim</u> - Unlawful Imprisonment.

This claim was dismissed by prior court order [Dkt. #210].

<u>Fourth Claim</u> - Assault and Battery.

This claim against Officers VanSantford and Thuring will go to trial before a jury consistent wth the Court's prior order denying summary judgment on the excessive force issue [Dkt. #258].

The Court has previously dismissed this claim as against Chief Forbes [Dkt. #310].

The City of Bremerton asks the Court in its current motion [Dkt. #316] to dismiss this claim as to the City.  Whether an employee was acting within the scope of his/her employment is an issue of fact for

the jury. *Dickinson v. Edwards*, 105 Wn.2d 457 (1986). That portion of the City's motion related to plaintiffs' fourth claim is Denied.

<u>Fifth Claim</u> - Negligent and/or Intentional Infliction of Emotional Distress.

This claim will be tried to a jury solely as it relates to Mr. Lassiter's claims of excessive force and assault and battery.

<u>Sixth Claim</u> - Violation of 42 U.S.C. §§1983 and 1988.

In an earlier Order [Dkt. #310] the Court dismissed this claim against Chief Forbes. The City now seeks summary judgment dismissing this claim [Dkt. #316].

A municipality is only liable under 42 U.S.C. §1983 if there is a policy or custom that violates a constitutional right. *Monell v. Dept. of Social Services of N.Y.,* 436 U.S. 658 (1978). The Court has previously determined that Chief Forbes, who is a policymaker for the City, did not by policy or established custom or direct action violate any constitutional right of the Lassiters. The entry into the home was lawful, as was the arrest of each Lassiter. The prosecution of those charges was proper (see ninth through eleventh claims below). Only the excessive force claim survives defendants' motion [Dkt. #258]. Plaintiffs claim that the failure of the police department to conduct an internal investigation into the Lassiters' claims stemming from July 25, 2003 extends *Monell* liability to the City. The Lassiters' complaint was directed to the City in the form of a demand letter written by their lawyer and dated October 15, 2004 (15 months after the event). The letter claims the officers involved committed perjury and false swearing in connection with their reports and pre-trial testimony in the Municipal Court action. The tape was played for one attorney representing the City and a transcript prepared by the plaintiffs was provided. No copy of the tape was provided to a defendant in this action until pre-trial discovery in this matter.

Upon receipt of the demand letter, hearing the tape played and reading the plaintiffs' transcript, the City dismissed the charges, put the officers on administrative leave and requested an investigation by the Washington State Patrol (WSP). Two months later, the WSP exonerated the officers of the perjury and false swearing charges and informed the City that the tape, the centerpiece of the plaintiffs' claim for damages, had been altered. The officers were promptly reinstated and informed that no further investigation would follow.

Whether an additional internal investigation into the Lassiters' claims of unlawful search, arrest,

1  assault and battery/excessive force should have been initiated after the WSP report (12/04 - 17 months
2  after the event) is an interesting question. The answer to that question, however, does not impact the
3  potential liability of either Chief Forbes or the City. Simply put, the circumstances of this case do not
4  present evidence of a custom, practice or policy of condoning deputy misconduct as urged by the plaintiffs.
5  The failure to conduct an additional investigation did not result in a constitutional violation suffered by the
6  Lassiters.
7      The Court has previously dismissed this claim as against Chief Forbes [Dkt. #31-] and now
8  dismisses the claim against the City of Bremerton.
9      <u>Seventh Claim</u> - Negligent Hiring.
10     The Court previously dismissed this claim against Chief Forbes, because he did not hire either
11 Officers VanSantford or Thuring. [Dkt. #310] The Court has been presented with no evidence that would
12 indicate that the officers were deficient in character, background, education, experience or any other
13 relevant criteria at the time of their hire. The claim of negligent hiring as against the City of Bremerton is
14 dismissed.
15     <u>Eighth Claim</u> - Negligent Supervision.
16     This claim against Chief Forbes was previously dismissed by the Court. [Dkt. #310] No evidence
17 presented to the Court supports the conclusion that the City of Bremerton failed to adequately train or
18 supervise Officers VanSantford and Thuring. Each has attended the required training academy and follow-
19 up workshops, including those dealing with domestic violence. They have each handled 7 to 10 domestic
20 violence calls per week for well over a decade. Their personnel files indicate that the Lassiters' complaint
21 is the only such complaint leveled at either of these officers. On the record before this Court, there is no
22 evidence to support plaintiffs' failure to supervise claim against the City and it is dismissed.
23     <u>Ninth Claim</u> - 42 U.S.C. §1983 Malicious Prosecution.
24     <u>Tenth Claim</u> - Malicious Prosecution.
25     <u>Eleventh Claim</u> - Abuse of Process.
26     Probable cause is a complete defense to an action for malicious prosecution. *Peasley v. Puget*
27 *Sound Tug,* 13 Wn.2d 485 (1942). The Court has previously ruled that the arrest of Mr. Lassiter and the
28 arrest by summons of Mrs. Lassiter were supported by probable cause. Moreover, there is no liability

where the defendant has done nothing more than carry out the process to its authorized conclusion, even if with bad intentions. *Batten v. Abrams*, 28 Wn. App. 737, 746 (1981). On the record before this Court, it is clear that all the City of Bremerton did with regard to prosecuting the Lassiters was to charge them based on probable cause and to later dismiss the charges at the first sign of controversy. No claim for malicious prosecution or abuse of process can be sustained on these facts. The Court has previously dismissed these claims as to the officers [Dkt. #309] and Chief Forbes [Dkt. #310]. These claims are now dismissed as to the City of Bremerton.

Twelfth Claim - Defamation.

On January 14, 2005 a meeting was held to discuss the status of various lawsuits and claims the Lassiters had pending or were threatening. Present at the meeting were various lawyers for the City and the County, as well as the Police Chief and City Risk Manager. Claire Bradley came to the meeting to deliver a letter, a plea agreement and an offer. In her letter of January 13, 2005, Bradley offered to let Mr. Lassiter plead guilty to a misdemeanor charge of tampering with evidence for altering the tape of the July 25, 2003 event. She stated that if the offer was rejected that the State of Washington was prepared to plead and prove that Lassiter's crime was a major economic offense involving attempted monetary loss substantially greater than typical and involving a high degree of sophistication and/or planning. She also alleged that the offense manifested deliberate cruelty to the victims and/or resulted in great psychological and/or emotional damage to the victims and their reputations within the law enforcement community.

An Information signed by Deputy Prosecutor Casad was included with the letter. It set forth the basis for the tampering charge and attached the Washington State Patrol report. (This Information was never filed with the Court.)

Plaintiffs contend that the letter authored by Bradley and the Criminal Information signed by Casad are defamatory and caused damage to the Lassiters. Defendants Casad and Bradley argue that the documents they signed do not give rise to liability because they stated opinion, not fact, and because the statements are privileged and there was no publication outside the parties themselves and their attorneys.

Proof of defamation requires: 1) a false and defamatory published communication; 2) lack of privilege; 3) fault; and 4) damages. *Moe v. Wise,* 97 Wn. App. 950 (1999). Here, plaintiff Lassiter claims the statements of Casad and Bradley defamed him because they could not prove that he was the one who

altered the tape or that he did so intentionally to manipulate the municipal court criminal action or to promote the $5 million civil claim. Mrs. Lassiter had not yet come forward to confess that, as between the two, only she had access to the tape and that her husband could not have been responsible for the alteration.

The Court agrees with the defendants that the Information and the cover letter contain statements of opinion based upon the facts as they had been presented to prosecutors at that time. The documents are also privileged communications issued as part of the plea bargain process.[2] There was no publication beyond those involved in the broader settlement negotiations and no discernable damage suffered by the Lassiters as a result of the publication.[3] The defamation claim is Dismissed.

<u>Thirteenth Claim</u> - 42 U.S.C. §1983 Malicious Prosecution.

<u>Fourteenth Claim</u> - Malicious Prosecution

<u>Fifteenth Claim</u> - Abuse of Process.

These claims all stem from the prosecution of Kenneth Lassiter in Superior Court for Obtaining a Signature by Deception or Duress, Tampering with Physical Evidence and Obstructing a Law Enforcement Officer. The charges were filed on May 27, 2005, eleven days after the Lassiters filed their civil claim. The filing of charges did not result in Mr. Lassiter being taken into custody.

The plaintiffs allege a civil conspiracy involving Chief Forbes and attorneys for the City of Bremerton combined with prosecutors Casad, Bradley, Mitchell and Kitsap County. Plaintiffs claim that the charges were filed with malice and without probable cause by people operating under a conflict of interest created by the Legal Services Agreement and their desire to protect the City of Bremerton from civil damages.

---

[2] Acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his/her role as an advocate for the state are entitled to the protections of absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

[3] Indeed, the only damage claimed by plaintiffs stems not from the publication of the material but by the prosecutors carrying through with their threat to prosecute.

ORDER
Page - 11

The Court has previously dismissed these claims as against Chief Forbes [Dkt. #310]. Defendants Casad, Bradley and Mitchell [Dkt. #313], the City of Bremerton [Dkt. #316] and Kitsap County [Dkt. #318] all move for summary judgment dismissing these claims as to them. Plaintiffs bring cross-motions for summary judgment against these same defendants on these same claims [Dkt. #'s 319, 324 and 326]. At oral argument, Plaintiffs conceded that prosecutors are absolutely immune for their charging decisions. They argued that defendant Mitchell, however, is only eligible for qualified immunity because he signed a supplemental certificate for probable cause which converts him to status of witness acting outside the traditional role of a prosecuting attorney. As a witness, he is only protected by qualified immunity. *Kalina v. Fletcher*, 522 U.S. 118 (1997).

Plaintiffs argue that like the prosecutor in *Kalina*, Mitchell signed a document with factual errors maliciously placed within, or omitted from, the document in order to further the aims of the civil conspiracy against Mr. and Mrs. Lassiter. The misrepresentations alleged are two:

> 1) Although the certification correctly informs the Court that Lassiter was previously charged with obstruction and that that charge was voluntarily dismissed "on an assumption by the prosecutor that there may have been serious credibility issues with the officers," it fails to inform the Court that the State has yet to seek Court permission to reinstate the charge;
>
> 2) Plaintiffs claim the statement "I have probable cause to believe that Lassiter is guilty" of the charges is a material misstatement of fact.

Defendants in a §1983 action are entitled to qualified immunity from damages for civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457, U.S. 800, 818 (1982). The existence of qualified immunity generally turns on the objective reasonableness of the actions, without regard to the knowledge or subjective intent of the particular individual. *Id.* at 819. Whether a reasonable officer could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in the litigation. *ActUp!Portland*, 988 F.2d at 872-73. In analyzing a qualified immunity defense, the Court must determine: 1) whether a constitutional right has been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and 2) whether the right

ORDER
Page - 12

was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

When the facts and circumstances relied upon to establish a civil conspiracy are as consistent with a lawful or honest purpose as with an unlawful undertaking, they are insufficient to sustain a claim of civil conspiracy. *All State Gas, Inc. v. Bechaud*, 100 Wn. App. 732, 740 (2000). The theory of civil conspiracy proferred by plaintiffs in connection with these claims is the simultaneous negotiations of civil and criminal matters within the context of an alleged conflict of interest. Plaintiffs have not produced evidence that defendants conduct was unlawful or, while lawful, was for an unlawful purpose.

First, the conflict advanced by plaintiffs through their expert, the dual representation of clients (RPC 1.7), is waivable by written consent from the clients. The legal services contract between Kitsap County and the City of Bremerton constitutes written consent of the clients. Moreover, the tension inherent in charging decisions in the face of present or promised civil claims would be no different if contained wholly within a single agency. The potential for civil litigation in the aftermath of an unsuccessful prosecution looms as large whether the civil defendant would be the prosecutor's current employer (Kitsap County) or the employer's largest client (City of Bremerton). The relationship between the City and County regarding legal services is authorized by law, consented to by the parties and raises no spectre of illegal conduct or purpose.

As for the simultaneous negotiations featured in the January 14, 2005 meeting, the Court agrees with Professor Boerner that such simultaneous negotiations are lawful and attorneys who engage in them are acting ethically when so engaged. "Release-dismiss" agreements in which a prosecutor agrees to not file or to dismiss criminal charges in exchange for the defendant's release of any civil claims have been approved by many courts, including the United States Supreme Court. *See Town of Newton v. Rumery*, 480 U.S. 386 (1987); *Musso-Escude v. Edwards*, 101 Wn. App. 560 (2000). No civil conspiracy is presented by the facts proffered by the plaintiffs.

Turning to the substance of the Certification for Determination of Probable Cause signed by defendant Mitchell, the Court has previously ruled that he is qualifiedly immune from liability. Based upon a comparison between the recitation of facts provided by Mitchell to the Superior Court and the undisputed facts of this case, the Court found no misstatement of relevant facts [Dkt #311; 4:9-11].

Plaintiffs counter with their current two-part argument. The Court is not persuaded to reconsider or in any way alter its previous conclusion. The statement of belief that facts provided to the Court add up to probable cause is an opinion, not a statement of fact. Furthermore, the failure to inform the Court that relief has not yet been granted to allow reinstatement of the charge, while material, is not sufficient to mislead the reviewing court and does not defeat qualified immunity.

As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs,* 475 U.S. 335, 341 (1986). As the Supreme Court stated in *Malley v. Briggs*:

> "Under the *Harlow* standard . . . an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner. The *Harlow* standard is specifically designed to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment, and we believe it sufficiently serves this goal."

*Id*. at 341. The Court went on to say: "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable [internal citation omitted], will the shield of immunity be lost." *Id*. at 344-345. The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to those legal constraints on conduct, not only of police, but of witnesses and prosecutors acting as witnesses. *See Saucier v. Katz*, 533 U.S. 194, 205 (2001). The fact that defendant Mitchell did not inform the Court that permission had yet to be granted to reinstate the Obstruction charge was at worst, a reasonable mistake, which should not, under the circumstances of this case, give rise to personal liability. Subsequent actions taken, or not taken, by Mitchell, while acting within the traditional role of prosecutor, are absolutely immune and likewise do not give rise to personal liability. Claims thirteen through fifteen are Dismissed.

<u>Sixteenth Claim</u> - 42 U.S.C.§§1983 and 1988.

This claim was previously dismissed as to Kitsap County [Dkt. #311].

<u>Seventeenth Claim</u> - Negligent Hiring.

There is no evidence provided to the Court to support plaintiffs' allegation that Kitsap County was negligent in the hiring of those deputy prosecuting attorneys involved in the Lassiter matter: Bradley, Casad and Mitchell. No evidence of misconduct prior to hiring or, for that matter, subsequent to hiring is before this Court. This claim against Kitsap County is Dismissed.

<u>Eighteenth Claim</u> - Negligent Supervision.

There is no evidence before the Court to support this claim which also references DPA's Bradley, Casad, and Mitchell. This claim against Kitsap County is Dismissed.

<u>Injunctive Relief</u>

Plaintiffs claim for injunctive relief was previously Dismissed [Dkt. #157].

## CONCLUSION

For the reasons stated in this opinion and expressed during oral argument, the motions for reconsideration [Dkt. #'s 333, 335 and 337] are **DENIED**. The City of Bremerton's Motion for Summary Judgment [Dkt. #316] is **GRANTED IN PART AND DENIED IN PART.** The Motion for Summary Judgment of Defendants Casad, Bradley and Mitchell [Dkt. #313] is **GRANTED**. The Motion for Summary Judgment of Kitsap County [Dkt. #318] is **GRANTED**. The Plaintiffs' Cross-Motions for Summary Judgment and Partial Summary Judgment [Dkt. #'s 319, 324 and 326] are **DENIED.**

DATED this 5th day of March, 2007.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE